McClenachan *v.* Malis, Admrx. et al., Appellants.

Argued December 9, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert T. McCracken,* with him *David S. Malis* and *Charles Edwin Fox,* for appellants.—Plaintiff could not convey free and clear of encumbrance: Hoover v. Pontz, 271 Pa. 285; Rugg v. Realty Co., 261 Pa. 453.

If a vendee performs or tenders performance and the vendor is unable to perform his part, the vendee may rescind: Erie v. Vincent, 8 Watts 510; Stitzel v. Kopp, 9 W. & S. 29.

The purchase money was not sufficient to pay the encumbrance: Croskey v. Stockley, 85 Pa. Superior Ct. 498.

It was intended that the $30,000 remain as a lien and not be paid in cash: Schweyer v. Walbert, 190 Pa. 334.

*Clarence G. Myers,* with him *James L. Rankin* and *Duane, Morris & Heckscher,* for appellee.—Where covenants are mutual and to be performed at the same time, plaintiff need only aver a readiness and willingness to perform: Williams v. Bentley, 27 Pa. 294; Douglas v. Hustead, 216 Pa. 292; Boyd v. Hoffman, 241 Pa. 421.

If the vendor is ready and willing to pay off and satisfy such encumbrances, and has it within his power to compel their immediate satisfaction he may do so out of the proceeds or with the aid of the proceeds coming to him at settlement: Moore v. Shelly, 2 Watts 256; Irvin v. Bleakley, 67 Pa. 24.

Plaintiff offered to convey an insurable title in accordance with the agreement of sale: Baker v. Kaplan, 282 Pa. 239; Perkinpine v. Hogan, 47 Pa. Superior Ct. 22.

Objections appearing on a preliminary settlement certificate are not conclusive.

When parties have by their conduct placed their own interpretation upon an agreement, the court will not, in the absence of fraud or mistake, interfere with that interpretation: Phila. v. Coal Co., 290 Pa. 87.

OPINION BY MR. JUSTICE LINN, January 9, 1933:

This is a suit by a vendor against his vendees for the purchase price of real estate in the City of Chester, less $3,000 paid on account. The plaintiff has judgment. Defendants have appealed. Though in form assumpsit, in fact the vendor seeks specific performance, asking payment of the agreed consideration in exchange for his deed. By their agreement, the equitable estate in the land passed to defendants, plaintiff holding the legal title for them, the equitable property in the consideration passing to plaintiff; the suit, therefore, is governed by well-settled equitable principles: Hoover v. Pontz, 271 Pa. 285, 114 A. 522; Coates v. Cotteral, 290 Pa. 237, 138 A. 756; cf. Bohlen v. Black, 237 Pa. 399, 85 A. 470.

The defense was that plaintiff could not make a title insurable clear of encumbrances by any title company doing business in Chester. The alleged circumstance, creating the difficulty, was said to grow out of the following clause in the habendum of a deed dated December 16, 1812: "under and subject to the payment of the yearly rent of six pence as hereafter to grow due and payable." The record contains nothing to show (and witnesses testified that no information about it could be found) when or how or in whose favor the charge was created. There was evidence that in another deed dated February 12, 1783, a larger lot including that in suit, was conveyed "under the yearly rent of one shilling lawful money of America payable unto the said Jonas Sanderland [not a party to the deed] his heirs and assigns on the 25th of March yearly forever." With no more information than those recitals give, the parties have referred to the rent, in the record and briefs, as a ground rent; for convenience, we shall retain that designation, without, however, intimating that it was a ground rent, as that term is technically well understood in this Commonwealth: Ingersoll v. Sergeant, 1 Whart. 337; Wallace v. Harmstad, 44 Pa. 492.

The agreement of sale was made September 25, 1925. The parties agreed to perform "within ninety days from date hereof, said time to be [of] the essence of this agreement, unless extended by mutual consent in writing endorsed hereon." On December 5, 1925, and on March 11, 1926, each time, in consideration of the payment of $200, plaintiff granted defendants a ninety-day extension for performance, bringing the time to June 25, 1926. On June 23d, by writing, they again extended the time to July 1, 1926. Defendants' pleadings admit that all three extensions were granted at their request.

On June 5, 1926, defendants ordered from the Real Estate Title Insurance and Trust Company of Philadelphia, a title search, pursuant to which that company issued its settlement certificate dated June 18th. Among "encumbrances and claims" noted on it was "Grd. rent 6 pence as mentioned in deed [book] L, page 77" (the deed first quoted above). A mortgage for $17,000 made by plaintiff to Cambridge Trust Company, and past due, was also noted. That certificate was not conclusive that the encumbrances existed: Groskin v. Knight, 290 Pa. 274, 138 A. 843.

The purchase price of $46,000 was payable $2,000 immediately, $1,000 in thirty days (which was also paid), $13,000 at settlement, $30,000 secured by first mortgage payable in three years. The agreement also provided: "The premises are to be conveyed clear of all encumbrances and easements except mortgage for $30,000. . . . . . . The title to be such as will be insured by any title company doing business in the City of Chester."

Trial errors resulted in the treatment of the ground rent as affected by the agreement of sale. If the title companies in Chester, or the Philadelphia Company to whom defendant applied, as doing business in Chester, would insure the title clear of encumbrances, notwithstanding the rent recited on the search, defendants were required to take it, because they had agreed to do so: Baker v. Kaplan, 282 Pa. 239, 127 A. 623. In plaintiff's

view of the case, that was the paramount issue on trial. The assignments of error complaining that evidence to prove their willingness so to insure was admitted, and that plaintiff had himself obtained such insurance when he purchased, are overruled.

The evidence will support a finding that on June 23, 1926 (two days before the second extension of ninety days expired), one of defendants took the settlement certificate to plaintiff, in Chester, who, with the defendant, then took it to the Delaware County Trust Company, which had insured the title to plaintiff, clear, when he purchased the property. The title officer of that company, in his presence, telephoned to the Real Estate Title Insurance and Trust Company in Philadelphia and then wrote to that company a letter of indemnity agreeing to indemnify it for removing the objection from the search, the "indemnity to extend [even] to any future insurance you may be called upon to issue by reason of issuing the present insurance." That letter was handed to the defendant who had also heard it dictated. On behalf of plaintiff, it is contended that the defendant should have presented the letter to the Philadelphia Company, and that, if he had, it would at once have removed the objection from the settlement certificate. A witness representing the Real Estate Title Insurance and Trust Company testified that the company would have insured the title clear of that rent on receipt of that letter. Defendants did not present the letter, and, on call at the trial, produced it and it is in evidence. At this point it may be remarked (in view of the position apparently taken by defendants at the settlement to be referred to later), that fair dealing required the defendant to present that letter to the company promptly, or to decline to accept it; if he had presented it the rent would have been taken off the search and would have disappeared as an obstacle to the settlement. If he had declined to accept it, plaintiff might easily have met the objection. As the case is governed by equitable principles, the letter must be

treated as delivered, with the result, if the jury should credit the evidence, that there was no basis for the objection on which defendants claimed the right to rescind. Witnesses representing the title companies in Chester (other than the Delaware County Trust Company which had already insured it, clear, to plaintiff) testified that their companies would have insured the title, clear of the rent, on receipt of a similar letter from the Delaware County Trust Company which it was willing to issue. On July 1st the two vendees accompanied by two lawyers representing them, met plaintiff in his office in Chester. They made calculations usually prepared in such circumstances, apportioning taxes, fire insurance, etc., allowing credit for $3,000 paid on account, and arrived at the cash balance payable by the vendees, $12,954.70, in addition to the $30,000 mortgage to be given by them. The vendees produced the cash and their bond and mortgage for $30,000 duly executed and also (in accord with what counsel for vendees testified was the Philadelphia custom) a draft of a deed to vendees (which he had prepared) ready for execution by plaintiff. Objection was then made by defendants, acting by their counsel, that the ground rent was an encumbrance which plaintiff had not removed and, in the discussion of that subject, the negotiations seem to have been abruptly terminated in circumstances requiring the finding of a jury to ascertain the exact facts, that is, who refused to go on, and why, and whether there was justification or not. If, as plaintiff contends, he was then prepared to deliver a title as agreed and offered to execute the draft of deed which had been prepared for that purpose, and that defendants broke off the negotiation and left the meeting without adequate cause, he is entitled to recover,—of course, doing what he agreed to do, as the court below ordered. It will be observed that, by their contract, all that plaintiff was bound to do was to deliver a title which the companies would insure clear. He was not obliged otherwise "to remove" or "clear off the ground rent" as one

of defendant's attorneys at the time demanded, as he himself testified. If, then, the settlement failed because defendants demanded more than they were entitled to have, and, on plaintiff's refusal to comply, walked out (as the jury may have found) they can take nothing by their conduct; it had, however, the effect of extending the time for settlement, unless the vendor chose to accept their proposed rescission of the contract (cf. Loughney v. Quigley, 279 Pa. 396, 400, 124 A. 84 et seq.; Sylvester v. Born, 132 Pa. 467, 19 A. 337), which he declined to do. His suit is expressly declared to be in affirmance of the contract, while defendants, in their counterclaim for the hand money, aver that they rescinded, an averment with which the evidence of their counsel, just quoted, seems consistent. On the other hand, if plaintiff was unable to deliver title as agreed, and defendants have shown that they were ready and willing to perform, they are entitled to a return of their hand money. On this phase of the case particularly the jury should be adequately and clearly instructed with due regard to the application of controlling equitable principles.

The evidence shows that the settlement was broken off before the parties reached consideration of the $17,000 mortgage. At the trial, plaintiff showed that, by July 1, 1926, the mortgage had been reduced to $15,000, that it was past due, and that with money to his credit in bank available for the purpose, together with the cash then payable by defendants, he would have been able to pay the debt and have the mortgage satisfied immediately. As the parties met in Chester and not in the county seat, both must have contemplated that some steps, such as satisfying the mortgage of record, could not be taken at Chester and would be performed after the meeting. By familiar rules governing specific performance plaintiff was not obliged to pay and satisfy the mortgage before he knew whether defendants were ready to perform their part of the agreement; their argument on this subject completely disregards the rules applicable: Boyd v.

Hoffman, 241 Pa. 421, 424, 88 A. 675; Irvin v. Bleakley, 67 Pa. 24, 29; Devling v. Little, 26 Pa. 502, 508; Dalzell v. Crawford, 1 Clark 155.

The record shows that between the date of the collapse of the settlement and the time of the trial, plaintiff, by proceedings in the Common Pleas of Delaware County, had obtained a decree discharging the lien of the yearly rent of six pence; that fact was relevant if plaintiff is found not to have been in default: Tiernan v. Roland, 15 Pa. 429, 436, 440; Moss v. Hanson, 17 Pa. 379, 382.

After suit was brought in 1926, one of defendants died and his executrix was substituted. When plaintiff was asked to testify in chief to matters occurring before the death of the defendant Malis, his competency was challenged under the Evidence Act of 1887, P. L. 158. The learned trial judge erred in overruling the objection: Swieczkowski v. Sypniewski, 294 Pa. 323, 327, 144 A. 141. He was competent to testify only as he was brought within the terms of the Act of June 11, 1891, P. L. 287; see Ray's Est., 304 Pa. 421, 434, 156 A. 64, and cases there considered.

After verdict for the plaintiff appellants filed a petition asking for the amendment of the verdict "so that the lien and satisfaction as to the $30,000 be restricted to the premises," the subject of the sale. A rule to show cause was granted, which, after answer by plaintiff, was discharged. The request was based on the argument that plaintiff should be required to look only to the land for payment of $30,000 because he had agreed to take back a mortgage for the sum. But, as defendants had agreed to pay the sum of $46,000 for the land, they are not to be relieved of their obligation to pay if again found to be in default, as the verdict in this case indicated. Moreover, defendants interpreted their own contract by executing their bond and mortgage for delivery at the settlement: Fisher v. Ronemus, 267 Pa. 325, 330, 110 A. 87.

We have said nothing about the effect on the rent of the decree of the orphans' court made in 1859, because sufficient facts are not before us: Hoover v. Pontz, 271 Pa. 285, 288; see, however, Salter v. Reed, 15 Pa. 260. As plaintiff is incompetent to testify to matters occurring before the death of the defendant Malis, it is unnecessary to discuss the contention made under section 7 of the Act of April 27, 1855, P. L. 368, 12 PS, section 80.

We must sustain the assignments of error particularly challenging the admission of plaintiff's testimony on the ground that he was incompetent under the Evidence Act of 1887; the 26th and the 32d complaining of instructions to the jury on the ground that they were inadequate in the circumstances; and the 21st on the ground that the opinion of counsel on the difference between a quit rent and ground rent was irrelevant on this record. The other assignments are overruled.

Judgment reversed, new trial ordered.